**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CLAUDIO HERNANDEZ, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| J. STERLING MORTON HIGH SCHOOL, | ) | |
| DISTRICT 201, | ) | JURY DEMANDED |
| Defendant. | ) | |

## COMPLAINT

1.      Plaintiff, Claudio Hernandez, brings this action against Defendant J. Sterling

Morton High School District 201 ("District 201"), to redress District 201's race-based

harassment, retaliation, and wrongful termination of his employment. Mr. Hernandez brings this

action under 42 U.S.C. § 1981.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action against District 201 pursuant to 28

U.S.C. §§ 1331 and 134.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all of the

events giving rise to the claims in this action took place in the Northern District of Illinois.

## JURY DEMAND

4.      Mr. Hernandez demands a trial by jury.

## PARTIES

5.      Mr. Hernandez was an employee of District 201 from 2000 through 2015.

6.      Mr. Hernandez is a United States citizen and resident of the Northern District of

Illinois.

7.      Mr. Hernandez is Hispanic.

1

8.      District 201 is a public school district in Cicero, Illinois.

**FACTS**

9.      Mr. Hernandez was hired as a maintenance worker in the custodial department of District 201 in February 2000.

10.     Beginning in February 2000, and continuing until District 201 terminated Mr. Hernandez's employment in 2015, Mr. Hernandez's coworkers and supervisors subjected him to racial discrimination and to retaliation after he complained about the discrimination.

11.     Beginning in 2008, and continuing until District 201 terminated Mr. Hernandez's employment in 2015, District 201 employees subjected Mr. Hernandez to racial slurs and insults such as, "Go back to Mexico," "You should not be working here," "Go to ESL," and "You're a fucking chopper," as well as other similar slurs and insults.

12.     Beginning in 2008, and continuing until District 201 terminated Mr. Hernandez's employment in 2015, District 201 employees repeatedly intimidated Mr. Hernandez by telling him that he was being watched by supervisors, including the District 201 superintendent, while at work.

13.     Even though, beginning in 2008, Mr. Hernandez was subjected to taunts and racial slurs at work, he continued to be a dedicated employee and sought to move up in District 201 by applying for a position for which he was most qualified.

14.     In early 2008, Mr. Hernandez learned that one of District 201's four boiler firemen ("firemen") would soon retire.

15.     Once that retirement was announced, Mr. Hernandez was the first person to submit an application for the position.

16.     Mr. Hernandez met District 201's qualifications for the fireman position when he applied.

17.     District 201 was required by its collective bargaining agreement with Morton High School Custodial and Maintenance Employees Union Local 73, SEIU-CTW ("the Union") to consider applications for the fireman position in the order they were received, and to give preference to internal applicants.

18.     District 201 did not hire Mr. Hernandez for the fireman position, and instead hired a white applicant who was not an internal candidate and was not qualified.

19.     Mr. Hernandez filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in March 2008 asserting that District 201 did not hire him for the fireman position because he is Hispanic.

20.     Approximately four months after Mr. Hernandez filed his March 2008 EEOC complaint, District 201 fired the white employee it had just hired, gave Mr. Hernandez the fireman job, and entered into a financial settlement with him.

21.     Mr. Hernandez's supervisor, James Zundell, Head of the Custodial Department, informed him in approximately July or August 2008 that District 201 was transferring him into the fireman position.

22.     Mr. Zundell is white.

23.     Mr. Zundell told Mr. Hernandez to speak with the District 201 Principal, Hector Garcia, about transitioning into the fireman position.

24.     Mr. Hernandez subsequently had a conversation with Mr. Garcia, during which Mr. Garcia questioned Mr. Hernandez's qualifications for the fireman position, and stated that

Mr. Hernandez was "going to get his money," indicating that he did not think Mr. Hernandez was entitled to either the job or the settlement.

25.     Mr. Hernandez was unsettled by Mr. Garcia's comments regarding his becoming the new fireman.

26.     When he became a fireman in 2008, Mr. Hernandez earned a higher salary and more benefits than he had earned as a maintenance worker.

27.     Mr. Hernandez was well-qualified for his position as fireman and met District 201's expectations of its firemen.

28.     The State of Illinois requires firemen to be certified, and at all times Mr. Hernandez had the proper certification.

29.     District 201 had four firemen (all but Mr. Hernandez were white), and it most frequently called Mr. Hernandez to handle emergencies, even when he was not otherwise scheduled to work.

30.     On December 10, 2015, District 201 terminated Mr. Hernandez's employment for the sole reason that he is Hispanic and District 201 wanted to replace him, and did replace him, with a white employee.

31.     District 201 purported to terminate Mr. Hernandez for stealing school property, but District 201 knew its charge against Mr. Hernandez was false.

32.     For months and years prior to terminating Mr. Hernandez's employment on December 10, 2015, District 201 subjected Mr. Hernandez to repeated racially charged verbal attacks, harassment and intimidation.

33.     In the months and years before District 201 terminated Mr. Hernandez, District 201 employees verbally attacked Mr. Hernandez with racial insults, including but not limited to

insults such as, "Go to ESL;" "Go back to Mexico you fucking chopper;" "You're a fucking chopper;" and "You should not be working here." These insults and others like them humiliated Mr. Hernandez and made him very uncomfortable at work.

34.     In the months and years before District 201 terminated Mr. Hernandez, District 201 employees had a practice of telling Mr. Hernandez that he was being watched by supervisors and on the school security cameras.

35.     District 201 employees repeatedly, and for no other reason than to intimidate Mr. Hernandez based on his race, asked Mr. Hernandez if he had taken various items others reported as missing. This practice made Mr. Hernandez feel intimidated and uncomfortable at work.

36.     Dr. Michael Kuzniewski, who is white, became District 201's Superintendent in 2010, and shortly after he started in that capacity, he encountered Mr. Hernandez in a school hallway, having not previously met Mr. Hernandez.

37.     During the encounter Dr. Kuzniewski intimidated Mr. Hernandez by commenting, just loudly enough for Mr. Hernandez to hear, "You're the one who made that complaint, you wanted to get paid."

38.     On several occasions, Mr. Hernandez told his supervisor, Mr. Zundell, about the verbal attacks and intimidation he was suffering because he is Hispanic, and asked for his help.

39.     Mr. Zundell did not take any action to address the verbal attacks and intimidation, instead asking Mr. Hernandez, "Why are you telling me this?" and making other similar remarks.

40.     In October or November 2014, Mr. Zundell called Mr. Hernandez at home one Sunday evening to tell him of an emergency with a boiler at school and ask him to come in to work.

41.     Mr. Hernandez routinely answered emergency calls for District 201.

42.     After the call, Mr. Hernandez went to the school to fix the boiler.

43.     When Mr. Hernandez arrived at the school, he parked his truck in the faculty parking lot, close to the school building, in a space marked as reserved for the Principal.

44.     Mr. Hernandez did not expect the Principal or faculty to arrive, since it was a Sunday evening.

45.     While Mr. Hernandez was working on the boiler, a District 201 security employee radioed him to say that Dr. Kuziewski had arrived at the school.

46.     Mr. Hernandez then went to look at the faculty parking lot, where he saw a white car parked next to his truck and Dr. Kuzniewski crossing the lot toward the school.

47.     As Dr. Kuzniewski approached the school, he yelled racial insults at Mr. Hernandez.

48.     Dr. Kuzniewski yelled at Mr. Hernandez, "Can't you read the fucking sign? Of course you can't read, you fucking Spic."

49.     Dr. Kuzniewski continued making racially charged comments, including calling Mr. Hernandez "a fucking Mexican" and telling him he should not be working in the United States.

50.     Dr. Kuzniewski also warned Mr. Hernandez to "read his contract," and then laughed at him, saying, "Oh, you can't read it, you Spic."

51.     After the October or November 2014 incident in the faculty parking lot, and in the months leading up to Mr. Hernandez's termination, Dr. Kuzniewski, Mr. Zundell, and others at District 201 continued to intimidate Mr. Hernandez because of his Hispanic origin.

52.     For example, several times, Mr. Zundell and Dr. Kuzniewski told Mr. Hernandez that they were watching him.

53.     On multiple occasions, Mr. Zundell radioed Mr. Hernandez at school and asked him to tell him his location, saying, "I can't see you on the security cameras."

54.     Co-workers also taunted Mr. Hernandez on numerous occasions by saying that "the boss," Dr. Kuzniewski, was watching him.

55.     Dr. Kuzniewski and Mr. Zundell did not make similar remarks to white employees about watching them on security cameras, and Mr. Hernandez's white co-workers did not taunt each other about being watched by Dr. Kuzniewski.

56.     In 2015, Mr. Hernandez began to suspect, based on Mr. Zundell's comments, that Mr. Zundell wanted to remove him from the fireman job and replace him with Joseph Keating's brother-in-law, who was already working at District 201 as a plumber. Mr. Keating was the District 201 Director of Human Resources. Both Mr. Keating and his brother-in-law are white.

57.     On Saturday, October 17, 2015, Mr. Zundell called Mr. Hernandez at or around midnight to take care of an emergency at the school.

58.     Mr. Hernandez drove to school and fixed the problem in a few hours. He was ready to return home around 4:00 a.m.

59.     Mr. Hernandez therefore returned to his truck, but he could not get the truck to start.

60.     Mr. Hernandez had keys to one of the school vans. Given the hour (around 4:00 a.m.), he decided to drive the van home, knowing he would be able to return it when he reported for his regular shift about three hours later, which he did.

61.     On Monday, October 19, 2015, Mr. Zundell asked Mr. Hernandez if he had driven the school van home in the predawn hours of October 17.

62.     Mr. Hernandez confirmed that he had, and explained the circumstances. Mr. Zundell said nothing further about the matter.

63.     The three other firemen, all of whom were white, routinely drove the school vans for non-school purposes, including to and from their homes, and District 201 permitted them to do so.

64.     On the evening of November 10, 2015, Mr. Hernandez was working a regular shift at school. Before his shift ended, at around 9:00 p.m., a District 201 employee approached Mr. Hernandez and handed him a letter titled "NOTICE OF INVESTIGATORY MEETING" ("Notice") from Mr. Keating.

65.     In the Notice, Mr. Keating stated that the "issue" under investigation was twofold. First, according to the Notice, "[b]etween the dates of October 15, 2015 and October 17, 2015 you [Mr. Hernandez] were observed, on multiple occasions and without authorization, removing items from the East Campus building and placing them in your personal vehicle as well as a District vehicle."

66.     The second issue, according to the Notice, was that "during the same time period you were observed leaving the East Campus in a District vehicle without authorization and did not return for several hours."

67.     The Notice required Mr. Hernandez to attend an "investigatory meeting" the next day, November 11, 2015, at 3:30 p.m. at the District 201 office.

68.     On the morning of November 11, 2015, Mr. Hernandez reached his Union representative, Robert Szudarski.

69.     Mr. Szudarski had not seen the Notice, had not spoken with anyone at District 201 about it, and was surprised to learn of the mandatory meeting to be held later that day.

70.    On November 11, 2015, District 201 held the investigative meeting, which Mr. Hernandez, Mr. Keating, Dr. Kuzniewski, Dr. Kuzniewski's secretary, Mr. Zundell, and Mr. Szudarski all attended.

71.    Mr. Keating and Dr. Kuzniewski accused Mr. Hernandez of stealing school property.

72.    Mr. Keating and Dr. Kuzniewski urged Mr. Hernandez to admit to stealing, claiming that they had already contacted the police.

73.    Mr. Keating, Dr. Kuzniewski, and the other District 201 employees at the meeting knew they were not telling Mr. Hernandez the truth as they made this allegation, and knew that they did not have evidence that Mr. Hernandez stole school property.

74.    At the November 11, 2015 meeting, Mr. Keating and Dr. Kuzniewski showed Mr. Hernandez a video they had recorded of Mr. Hernandez a few weeks earlier, in October 2015.

75.    In the video, Mr. Hernandez could be seen carrying discarded brown packing boxes to his truck.

76.    Mr. Hernandez explained that the boxes had been in the trash, and that he was taking them home to reuse, a common employee practice.

77.    Dr. Keating and Mr. Kuzniewski asserted, without evidence, that the boxes were not empty.

78.    The discarded packing boxes that Mr. Hernandez took home were in fact empty.

79.     After the November 11, 2015 meeting, Mr. Hernandez received a letter on November 23, 2015 titled "RESULTS OF INVESTIGATORY MEETING," requiring him to attend another meeting the following day, November 24, 2015, at the District 201 office.

80.     Mr. Hernandez, Dr. Kuzniewski, Mr. Keating and Mr. Szudarski all attended the November 24, 2015 meeting.

81.     Mr. Keating began the meeting by showing Mr. Hernandez a letter of resignation that stated Mr. Hernandez was leaving District 201 on good terms, and asked him to sign it.

82.     When Mr. Hernandez declined to sign the resignation letter, Mr. Keating produced another letter titled "Notification of Placement on Unpaid Suspension."

83.     The Notice of Unpaid Suspension stated that effective the following day, November 25, Mr. Hernandez would be on "indefinite suspension without pay."

84.     The Notice of Unpaid Suspension further stated that District 201 reached its decision "based upon the outcome of the investigatory meeting held on November 11, 2015 regarding a series of incidents now judged to be serious misconduct."

85.     District 201 did not present any evidence at the November 24, 2015 meeting that the boxes Mr. Hernandez placed in his truck were anything other than trash available for any employee to take home.

86.     District 201 did not mention the police or a police investigation at the November 24 meeting, as it had at the November 11 meeting, and Mr. Hernandez was never questioned by the police.

87.     District 201 falsely accused Mr. Hernandez of being a thief and a liar.

88.     The Notice of Unpaid Suspension, handed to Mr. Hernandez at the November 24, 2015 meeting, announced that District 201 was seeking to terminate Mr. Hernandez's employment. The Notice reads, "On December 9, 2015 a recommendation to terminate your employment with J. Sterling Morton High School District 201 will be presented to the Board of Education. You will be notified of the Board's decision."

10

89.     District 201 did not advise Mr. Hernandez that he could attend the December 9, 2015 Board of Education meeting, a meeting that would determine whether his employment would be terminated.

90.     District 201 knew it was depriving Mr. Hernandez of his right to answer the false accusation that he was thief.

91.     District 201 intentionally denied Mr. Hernandez his right to appear before the Board of Education before being terminated as part of its discriminatory scheme to remove Mr. Hernandez from his job.

92.     Mr. Hernandez did not attend the December 9, 2015 Board of Education meeting, and therefore was not able to present facts showing that he had taken home empty boxes from the trash, and had not stolen any property from District 201.

93.     On December 10, 2015, Mr. Keating sent Mr. Hernandez a letter terminating his employment.

94.     District 201's alleged reasons for terminating Mr. Hernandez's employment were baseless pretexts for unlawful racial discrimination.

95.     District 201 intentionally plotted to terminate, and did terminate, Mr. Hernandez's employment for the sole reason that Mr. Hernandez is Hispanic.

96.     District 201's scheme to terminate Mr. Hernandez constituted unlawful retaliation against him for his report to the Union about Dr. Kuzniewski's racially charged verbal attacks and acts of intimidation.

97.     District 201's scheme to terminate Mr. Hernandez constituted unlawful retaliation against him for filing an EEOC complaint in March 2008 to challenge District 201's initial discriminatory failure to hire him as a fireman.

11

98.     While District 201 later acquiesced by giving him the job, Dr. Kuzniewski, Mr. Zundell, and others at District 201 immediately began to engage in retaliatory and discriminatory harassment of Mr. Hernandez, culminating in his wrongful termination.

99.     In the months and years prior to Mr. Hernandez's termination, District 201 gave preferential treatment to white employees accused of engaging in misconduct while at work, including finding such employees similar work at other school districts.

100.    At the time District 201 fired Mr. Hernandez, he earned a salary of $75,000.00 per year, and his pension, had he been able to retire from District 201, would have paid approximately $4200.00 per month for the rest of his life.

101.    After terminating Mr. Hernandez, District 201 hired Mr. Keating's white brother-in-law to fill the fireman position.

102.    In early 2016, Mr. Hernandez applied for a fireman position at the Naperville Community Unit School District 203 ("Naperville').

103.    Mr. Hernandez interviewed with Naperville's Director of Buildings and Grounds, and appeared to be well on track to get the job.

104.    When Naperville sought a reference for Mr. Hernandez from District 201, District 201 replied that Mr. Hernandez had been fired for stealing.

105.    As a result, Naperville did not hire Mr. Hernandez.

106.    As a consequence of District 201's racially motivated termination of his employment, Mr. Hernandez has been unable to find work as a fireman and has suffered damages in the form of lost benefits, earnings and wages.

107.    District 201's unlawful discrimination of Mr. Hernandez and its unlawful retaliation against him have caused Mr. Hernandez humiliation, trauma, and emotional distress.

## CAUSES OF ACTION

### Count I
Race Discrimination under 42 U.S.C. § 1981

108.    Mr. Hernandez re-alleges all preceding paragraphs of the Complaint and incorporates them herein.

109.    District 201 terminated Mr. Hernandez's employment on December 10, 2015 for the unlawful and discriminatory reason that Mr. Hernandez is Hispanic.

110.    District 201 had no lawful or legitimate reason to fire Mr. Hernandez, but instead devised a scheme to falsely charge Mr. Hernandez with stealing school property, without any evidence he stole anything.

111.    District 201 falsely claimed that video footage of Mr. Hernandez taking discarded cardboard boxes to his truck showed Mr. Hernandez to be a thief. District 201 knew this claim to be false, but used it as a pretext to terminate Mr. Hernandez.

112.    District 201 also claimed, as a pretext, to be terminating Mr. Hernandez for improper use of a school van between 4:00 a.m. and 7:00 a.m. on Saturday, October 17, 2015. Mr. Hernandez had timely reported this action and the compelling circumstances that required it, which included his truck failing to start at 4:00 a.m. after he had spent hours addressing an emergency at the school. Further, District 201 permitted firemen to drive school vans home when needed.

113.    In the months and years prior to his termination, District 201 employees and supervisors, including the Superintendent Dr. Kuzniewski, repeatedly and intentionally subjected Mr. Hernandez to verbal assaults that were designed to humiliate him, cause him severe emotional distress, and intimidate him on the basis of his race.

114.    After terminating Mr. Hernandez, District 201 hired a white employee to take his position as fireman.

## Count II
## Retaliation under the Civil Rights Act, 42 U.S.C. § 1981

115.    Mr. Hernandez re-alleges all preceding paragraphs of the Complaint and incorporates them herein.

116.    Dr. Kuzniewski, Superintendent of District 201, verbally attacked Mr. Hernandez with racial insults and slurs in an October or November 2014 incident in the faculty parking lot at school.

117.    Mr. Hernandez reported the incident to the Union, and thereafter Dr. Kuzniewski repeatedly acted to harass and intimidate Mr. Hernandez.

118.    Dr. Kuzniewski falsely charged Mr. Hernandez with stealing school property as a pretext to terminate his employment and replace him with a white employee.

119.    Dr. Kuzniewski's actions against Mr. Hernandez, and those of other District 201 managers, constituted prohibited retaliation against Mr. Hernandez for his lawful efforts to stop the racial discrimination he was experiencing at work.

## PRAYER FOR RELIEF

Mr. Hernandez prays that this Court enter judgment in his favor and against District 201, and:

A.    Award Mr. Hernandez damages in the amount of his future lost wages and benefits;

B.    Award Mr. Hernandez back pay damages;

C.    Award Mr. Hernandez such other compensatory damages to which he is entitled;

D.    Award Mr. Hernandez damages for emotional distress;

E.      Award Mr. Hernandez costs and reasonable attorney's fees; and

F.      Grant such other relief as may be proper.

Respectfully submitted,

/s/Susan Theiss
One of Plaintiff's Attorneys

Susan Theiss (6197127)
Karen Doran (6282773)
LAF
120 S. LaSalle St., Suite 900
Chicago, IL  60603
(312) 229-6328 (phone)
(312) 612-1528 (fax)
stheiss@lafchicago.org